IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JANIE LATONYA PERKINS,            )
                                  )
             Petitioner,          )
                                  )
     v.                           )    1:07CV955
                                  )
ANNIE HARVEY, Admin.,             )
North Carolina Correctional       )
Inst. for Women,                  )
                                  )
             Respondent.          )

**MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On November 3, 2005, Petitioner was convicted after trial by jury in Forsyth County Superior Court of obtaining property by false pretenses, felony larceny, felony breaking or entering, and attaining the status of a habitual felon. She received a term of 110 to 141 months' imprisonment for the obtaining property by false pretenses conviction, and a second, consecutive term of 110 to 141 months' imprisonment for the felony larceny and felony breaking or entering convictions. Both of these sentences were enhanced due to Petitioner's status as a habitual felon.

Petitioner appealed, and on January 2, 2007, the North Carolina Court of Appeals issued a published opinion in which it found no error in part, but vacated and remanded in part due to an error not relevant to the claims in issue here. See State v. Perkins, 181 N.C. App 209, 638 S.E.2d 591 (2007)(hereinafter

"Perkins I"). Specifically, the court vacated Petitioner's conviction for felony breaking or entering and remanded for entry of judgment and resentencing for misdemeanor breaking or entering in accordance with the jury's initial verdict. Id. at 221-22, 638 S.E.2d at 599. On January 25, 2007, the trial court resentenced Petitioner to a term of 93-121 months' imprisonment for felony larceny and misdemeanor breaking and entering.

Following her resentencing, Petitioner filed a second direct appeal in the North Carolina Court of Appeals. In an unpublished opinion filed November 20, 2007, that court found no error. See State v. Perkins, No. COA07-506, 2007 WL 4107751 (Table)(N.C. App. Nov. 20, 2007)(hereinafter "Perkins II"). During the pendency of her appeal, Petitioner also filed a motion for appropriate relief ("MAR") in the North Carolina Court of Appeals, which that court denied on November 1, 2007. There is no evidence that Petitioner sought any further direct or collateral review of her claims before filing her pro se federal habeas petition in this Court.

## Facts

In its published opinion, the North Carolina Court of Appeals summarized the facts as follows:

> At around 8:30 a.m. on the morning of 18 August 2004, Michael Grace, an attorney with the law firm of Grace, Holton, Tisdale, and Clifton, encountered defendant inside the entryway of the firm's Winston-Salem office. Mr. Grace was familiar with defendant from a time when he worked at a different office. While at that office, Mr. Grace had instructed defendant to stay away from his office. On the morning of 18 August 2004, Mr. Grace reminded defendant that he did not want her in his office. When, however, defendant mentioned that she was at the firm to see a secretary, Mr. Grace assumed

-2-

defendant was being represented by another member of the firm and directed defendant to one of the firm's office managers, Marilyn Moore.

Later that morning at about 10:30 a.m., Ms. Moore noticed a black male wearing a sports jersey coming down a hallway from the rear of the firm's office. As Ms. Moore stepped into the hallway, she saw defendant in the hallway, beyond the public reception area, as well. Ms. Moore asked defendant if she needed assistance, and defendant responded by indicating that she was with the man in the jersey. The man told Ms. Moore that he wanted to see attorney Mireille Clough, but Ms. Moore informed him that Ms. Clough was presently out of the office. Shortly thereafter, both defendant and her male acquaintance left the premises. No testimony presented at trial placed defendant at the firm after this point.

After having an early lunch on 18 August 2004, Ms. Clough returned to the firm's office. Since she was scheduled to appear in court at 1:00 p.m., she dropped off a bag of personal belongings inside her office and then departed for court. Inside the bag was a day planner that contained several of Ms. Clough's credit cards.

Around 1:30 p.m., Don Tisdale, another attorney with the firm, was returning to the office from lunch when he spotted a black male in a sports jersey coming out of Ms. Clough's office. When Ms. Clough returned to the office after court, at approximately 3:30 p.m., she discovered the day planner missing. She contacted her credit card companies and learned her cards had been used to make multiple purchases that afternoon at a Food Lion store on Waughtown Street.

Ms. Clough then contacted the police. She met with police officers at the Food Lion and reviewed the store's surveillance videotape. The videotape showed a woman, identified at trial as defendant, and a black male in a jersey at the checkout counter making purchases. Four separate transactions, in amounts ranging from $79.15 to $178.57, were accomplished in less than fifteen minutes using Ms. Clough's cards. Store receipts revealed that defendant had signed Ms. Clough's name to complete the purchases.

As two police officers, Detectives Gregory Dorn and Michael Poe, were driving to interview a witness in connection with the purchases at Food Lion, one of them noticed defendant coming out of a house at 1424 Waughtown Street. They stopped and approached defendant, explaining to her that they had seen her on a videotape using a

-3-

credit card to make purchases at the Food Lion. Defendant at first denied having been at the Food Lion, but then admitted being there, telling the officers that she had used a credit card belonging to her aunt. Defendant then changed her story again, telling the police that "a guy named Steve" let her use the card at Food Lion.

After defendant was placed under arrest, she led police to a nearby wooded area where the day planner and customer receipts from Food Lion were recovered. At 1424 Waughtown Street, a man named Steven Brooks was also found and arrested. The police identified Brooks from the videotape as the same man who accompanied defendant at Food Lion. Ms. Clough's credit cards were later found in a flower pot at the house on Waughtown Street.

Perkins I, 181 N.C. App. at 212-214, 638 S.E.2d at 594-595.

## Petitioner's Claims

In this Court, Petitioner contends that the trial court erred in three respects. First, she contends that, because of a defect in the indictment for obtaining property by false pretenses, the trial court was without jurisdiction to try her for that charge. Second, she claims that the trial court again erred when it denied her motion to dismiss the charge of obtaining property by false pretenses because there was insufficient evidence to support that charge. Third and finally, Petitioner contends that the trial court erred in denying her motion for a mistrial. Respondent seeks summary judgment as to all of Petitioner's claims.

## Discussion

In this case, Petitioner's habeas claims face two very different but equally fatal procedural problems. First, by neglecting to file a petition for discretionary review in the North

-4-

Carolina Supreme Court, Petitioner failed to exhaust her state court remedies. As such, her claims are now procedurally barred. Second, even if this Court considers Petitioner's contentions on their merits, it cannot grant habeas relief unless Petitioner shows that the North Carolina Court of Appeals' earlier decision as to these claims was either contrary to clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). No such showing has been made in this case. The Court will now examine each of these problems in greater detail.

**Procedural Bar**

In order to receive habeas relief on any claim, a petitioner must first exhaust his or her state court remedies. 28 U.S.C. § 2254(b)(1)(A). The rationale for this requirement is axiomatic.

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). In a two-tiered appellate system like North Carolina's, "one complete round" includes not only direct appeal to the State's intermediate appellate court, but also the opportunity to petition for discretionary review in the North Carolina Supreme Court. See id. Claims not raised in a petition to the state's highest court are non-exhausted and, therefore, procedurally barred from federal

habeas review.  Id.  Moreover, failure to exhaust state law remedies will result in the claims being procedurally barred from federal review if, upon return to the state courts, those courts would find that the claims are procedurally barred.  Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)(citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).  North Carolina General Statute § 15A-1419 imposes just such a mandatory procedural bar for claims that could have been presented on appeal or in a prior motion for appropriate relief.  Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001).

In the present case, all of Petitioner's habeas claims are procedurally barred for failure to exhaust state court remedies. Petitioner only raised these claims on direct appeal to the North Carolina Court of Appeals, which found no error after considering her claims on their merits.  She never filed a petition for discretionary review following this denial, and her window of opportunity to pursue this method of review may now be closed.  As such, these claims are procedurally barred under O'Sullivan v. Boerckel and Breard v. Pruett.

**Review on the Merits**

Notwithstanding the failure to exhaust state court remedies, a federal court may consider such claims if they are without merit and will be dismissed as such.  28 U.S.C. § 2254(b)(2).  When this Court considers Petitioner's claims on their merits despite the procedural bar, it must defer to the North Carolina Court of

-6-

Appeals' earlier decision on the merits. Under 28 U.S.C. § 2254(d)'s highly deferential standard of review, habeas relief cannot be granted in cases where a state court has considered a claim on its merits unless (1) the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or (2) the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 413. "Unreasonable" is not the same as "incorrect" or "erroneous," and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. Id. at 409-410. A holding is not reasonable simply because precedent written by one of the Nation's jurists agrees with it. Id. As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, both of Petitioner's habeas claims were raised on appeal to the North Carolina Court of Appeals and denied on their merits in that court's published opinion. Therefore, the strict standards for review set out above apply to the Court's analysis.

**Claim One**

Petitioner's first claim, that the trial court erred and was without jurisdiction to try her for obtaining property by false pretenses because of a defect in the indictment for that charge, fails to state a constitutional claim of error. Federal habeas corpus relief may not be granted for a mere error in applying state law. Thomas v. Taylor, 170 F.3d 466, 470 (4th Cir. 1999). Further, a federal court may not reexamine a state court's determination of state law. Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998)(claim alleging lack of jurisdiction based on a defective indictment rested upon an interpretation of state law and was, therefore, not cognizable on federal habeas review); Roach v. Angelone, 176 F.3d 210 (4th Cir. 1999).

Moreover, Respondent asserts Petitioner's defective indictment claim is meritless even if the Court were to ignore the obvious lack of cognizability. The Fourth Circuit has long held that deficiencies in state court indictments only provide a basis for federal habeas relief where they "make[] the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985). In the present case, as illustrated in Perkins I, no such

fundamental fairness existed. In that appeal, as here, Petitioner claimed that the indictment failed to allege a false representation of a subsisting fact, a required element for the crime of obtaining property by false pretenses. See Perkins I, 181 N.C. App. at 215, 638 S.E.2d at 595.

The indictment at issue alleged that defendant:

> unlawfully, willfully and feloniously did knowingly and designedly, with the intent to cheat and defraud, attempted to obtain BEER AND CIGARETTES from FOOD LION by means of a false pretense which was calculated to deceive. The false pretense consisted of the following: THIS PROPERTY WAS OBTAINED BY MEANS OF USING THE CREDIT CARD AND CKECK [sic] CARD OF MIRIELLE CLOUGH WHEN IN FACT THE DEFENDANT WRONGFULLY OBTAINED THE CARDS AND WAS NEVER GIVEN PERMISSION TO USE THEM.

Id. While this statement admittedly contains no allegation of a verbal representation by Petitioner, the North Carolina Court of Appeals went on to explain that this was not a requirement for a sufficient indictment.

> By alleging that defendant used a card that was issued in the name of another person, that was wrongfully obtained, and that she had no permission to use, the indictment sufficiently apprised defendant that she was accused of falsely representing herself as an authorized user of the cards. A "false pretense need not come through spoken words, but instead may be by act or conduct." State v. Parker, 354 N.C. 268, 284, 553, S.E.2d 885, 897 (2001), cert. denied, 535 U.S. 1114, 122 S.Ct. 2332, 153 L.Ed.2d 162 (2002). Here, the indictment adequately described the actions taken by defendant-i.e., her use of a card belonging to another person, wrongfully obtained, and without authorization-that led to the acquisition of the merchandise. We accordingly hold that the allegations in the indictment support the false representation element of the offense.

-9-

> As defendant was put on notice of the charge against her, we do not find the indictment to be defective for a lack of detail or specificity. See State v. Snyder, 343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996)(an indictment "'is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense'" (quoting State v. Coker, 312 N.C. 432, 434-35, 323 S.E.2d 343, 346 (1984)).

Id. at 215-216, 638 S.E.2d at 595-596. Petitioner provides nothing beyond conclusory allegations that the state court erred in its above, well-supported reasoning. In fact, there is no evidence that the indictment in this case was defective at all, let alone that its defects were severe enough to render Petitioner's entire trial fundamental unfair. Thus, she has not demonstrated that the state court's decision was contrary to established federal law or was based on an unreasonable interpretation of the facts, as required for a successful claim under 28 U.S.C. § 2254(d). For all of these reasons, in addition to Petitioner's failure to allege any constitutional claim of error, her first contention must be dismissed.

**Claim Two**

In Petitioner's second, related claim, she contends that the trial court erred in denying her motion to dismiss the charge of obtaining property by false pretenses because there was insufficient evidence to support that charge. Specifically, Petitioner alleges the following:

> The State failed to establish sufficient evidence that defendant made a false representation of a fact and that

-10-

> she intended to deceive Food Lion. The State did not call the cashier or bagger (who accepted payment and witness[ed] the transactions in question. Without evidence of any verbal representations on defendant's part that she had Mrs. Clough's permission, the state must rely on circumstantial evidence that defendant's falsely represented that she had Ms. Clough's permission.

(Pet. p. 7-8.) In other words, Petitioner essentially claims that there was insufficient evidence to support her conviction for obtaining property by false pretenses because the bulk of the evidence against her was circumstantial. Ultimately, this distinction is inapposite as explained by the court of appeals when discussing the indictment. Petitioner's guilt is premised on her actions, not words.

Moreover, the pivotal question for an insufficient evidence claim is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.'" Wright v. West, 505 U.S. 277, 284 (1992)(quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979))(emphasis in original). An argument that there was insufficient evidence in the present case clearly fails under this standard. As discussed in relation to Claim One, there is no requirement, as Petitioner contends, that a defendant's false representations be verbal in order to be actionable. See Parker, 354 N.C. at 284, 553 S.E.2d at 897. Instead, a defendant's actions alone may constitute a false pretense. Id. Here, as summarized in Perkins I,

> the State introduced videotape evidence showing defendant at Food Lion making purchases. In addition, the store

-11-

> receipts from those transactions showed that defendant
> accomplished the purchases with cards belonging to Ms.
> Clough and, further, that defendant had signed the
> receipts with the misspelled signature of Ms. Clough.

101 N.C. App. at 216, 638 S.E.2d at 596. The court concluded that, "[f]rom this evidence, a jury could reasonably infer that defendant, through her actions, falsely represented to Food Lion her authority to use Ms. Clough's credit cards and that her intent was to deceive Food Lion." Id. (citation omitted). As with Claim One, Petitioner fails to show that the state court's decision was contrary to established federal law or was based on an unreasonable interpretation of the facts. Absent such showing, Petitioner's claim must be dismissed.

**Claim Three**

In Petitioner's third and final claim, she contends that the trial court erred in denying her motion for a mistrial. She fails to identify any federal constitutional error. Respondent assumes that the federal issue lies in the right to have an impartial jury decide the case. Morgan v. Illinois, 504 U.S. 719 (1992). She claims such an issue is one of fact for the trial judge whose findings are presumed correct absent clear and convincing contrary evidence. Patton v. Yount, 467 U.S. 1025, 1036-1040 (1984).

The North Carolina Court of Appeals addressed this issue and found that the basis for the motion for a mistrial stemmed from Petitioner's own misconduct and it found no error in the denial of the motion. It stated:

-12-

Lastly, we consider defendant's argument that the trial court should have granted her motion for a mistrial. The transcript reveals that the following events took place during the trial. While riding in the courthouse elevator, defendant whispered to a juror standing near her that she was innocent. Upon learning of this incident, the trial judge described defendant's conduct as "highly improper," discharged the juror to whom defendant had whispered, and substituted the lone alternate.

Later, defendant was discussing her case with her attorney prior to court commencing one morning, when she decided to leave the courthouse. As defense counsel later explained to the trial judge, he was trying to persuade defendant to stay in court when "she bolted" and headed into a stairwell. Defense counsel followed her, hollering: "Janie, come back up here. Come on. We've got to get on with it." A member of the jury ("Mr. Johnson") also happened to be in the stairwell during this incident.

When later questioned by the judge, in the presence of the other eleven jurors, Mr. Johnson stated that he saw defendant and her counsel in the stairwell and overheard defendant say "she wasn't coming back in here, something like that." The trial judge then asked Mr. Johnson whether he could remain fair and impartial despite having witnessed this episode in the stairwell. Mr. Johnson indicated that he could. Before resuming the trial, the judge polled the entire jury, inquiring whether each juror could remain fair and impartial. The jurors all asserted that they could remain fair and impartial.

Out of the presence of the jury, defendant argued that Mr. Johnson must be dismissed from the jury panel and moved for a mistrial. At this point, removal of Mr. Johnson would necessarily have resulted in a mistrial, as no alternate jurors were available. On appeal, defendant argues the trial court should have declared a mistrial because Mr. Johnson not only overheard defendant's remark that she was leaving her own trial, but he reported this in the presence of the whole jury.

N.C. Gen.Stat. § 15A-1061 (2005) provides that a judge, "[u]pon motion of a defendant or with his concurrence ... may declare a mistrial at any time during

-13-

the trial." The statute mandates that "[t]he judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen.Stat. § 15A-1061.

Our Supreme Court has held that "'[a] mistrial should be granted only when there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict.'" State v. Bonney, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991) (quoting State v. Warren, 327 N.C. 364, 376, 395 S.E.2d 116, 123 (1990)). The decision on a motion for mistrial is committed to the sound discretion of the trial court, and the decision will not be overturned on appeal unless an abuse of discretion is shown. State v. Johnson, 341 N.C. 104, 114, 459 S.E.2d 246, 252 (1995).

While it would have been the much better practice for the trial judge to interview Mr. Johnson individually, rather than in front of the entire jury, a review of the record indicates that the trial court nonetheless acted within its discretion in denying the motion for a mistrial. The situation was of defendant's own making. She chose to flee from the trial after announcing her intentions in the public stairwell. Further, the lack of an alternate to substitute for Mr. Johnson was a direct consequence of defendant's inappropriate remarks to a juror. It is well established that arguments for a mistrial do not carry great weight when the grounds relied upon arise from a defendant's own misconduct. See State v. Marino, 96 N.C.App. 506, 507, 386 S.E.2d 72, 73 (1989) (where defendant moved for a mistrial after his own open-court "profane outburst," Court found no error in denial of motion because "[i]f defendant was prejudiced in the eyes of the jury by his own misconduct, he cannot be heard to complain").

Since the jurors each indicated, upon polling by the trial court, that they could remain fair and impartial, we cannot conclude that the trial court abused its discretion in denying the motion for a mistrial based on circumstances caused by defendant's own misconduct. See Johnson, 341 N.C. at 114, 459 S.E.2d at 252 ("trial court did not abuse its discretion in denying defendant's motion for a mistrial" where the "trial court gave

-14-

> corrective instructions to the jurors about th[e]
> incident and questioned them in order to determine if
> they were still able to give defendant a fair trial"). We
> therefore overrule this assignment of error.

Perkins I, 181 N.C. App. at 222-223, 638 S.E.2d at 599-600.

The trial court's findings – and the appellate court's decision to uphold them - are presumed correct. Under the deferential standard of review called for by 28 U.S.C. § 2254(d), Petitioner's claim should be denied as without merit.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (docket no. 5) be granted, that the habeas petition (docket no. 1) be denied, and that Judgment be entered dismissing this action.

*/s/ Russell A. Eliason*
**United States Magistrate Judge**

June 23, 2008

-15-

Case 1:07-cv-00955-NCT-RAE   Document 10   Filed 06/23/08   Page 15 of 15